IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| JIMMY BURNS,                              )<br>                                           )<br>    Plaintiff,                            )<br>                                           )<br>    v.                                     )<br>                                           )<br>FLORENCE COPELAND, in her                 )<br>individual capacity as                     )<br>Financial Support Worker                   )<br>with the Tallapoosa County                )<br>Department of Human                        )<br>Resources; and BRENDA FLOYD,)<br>in her individual capacity                 )<br>as Supervisor of the                       )<br>Tallapoosa County                          )<br>Department of Human                        )<br>Resources Child Support                    )<br>Enforcement Division,                      )<br>                                           )<br>    Defendants.                            ) | CIVIL ACTION NO.<br>  3:10cv464-MHT<br>       (WO) |

OPINION

Plaintiff Jimmy Burns brings suit against defendants Florence Copeland and Brenda Floyd, both employees of the Tallapoosa County Department of Human Resources (DHR), claiming that, in their 'individual' capacities, they violated his federal statutory and constitutional rights, as enforced through 42 U.S.C. § 1983, by misusing state

legal proceedings to collect outstanding child support payments when his only source of income was federal Supplemental Security Insurance benefits (SSI). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).[1]

This case is now before the court on Copeland and Floyd's motion to dismiss. For the reasons that follow, the motion will be granted.

## I.  MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor. <u>Duke v. Cleland</u>, 5 F.3d 1399, 1402 (11th Cir. 1993).

---

1.  In his complaint, Burns states that, "This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367(a)." Comp. ¶ 3 (Doc. No. 1).  However, as the court has not identified any state claims brought by Burns, there is no need to assert supplemental jurisdiction in this case.

## II.  BACKGROUND

The court takes these facts from Burns's complaint and the exhibits attached to it.  Burns has not stated the facts at issue either clearly or with much detail, and the court has done its best to ascertain the order of events in question.

Construed in his favor, the facts show that Burns was ordered to pay child support in the amount of $ 10.00 per month to mother of his son.  As of December 2008, he was $ 4,157.18 in arrears on his child-support payments.

Because Burns has pemphigus foliaceus, a modern name for leprosy and "a very rare and highly debilitating skin condition," Burns Compl. (Attached Aff. ¶ 4) (Doc. No. 1-3), he applied for SSI benefits.  The Social Security Administration at first denied his application for benefits.  Burns requested a reconsideration, and in late 2008, the Social Security Administration notified him that he was eligible for SSI, at which point he began receiving payments.  Under 42 U.S.C. §§ 407(a) and

1383(d)(1), the "anti-attachment" or exemption provision of the Social Security Act, SSI benefits are not subject to garnishment for payment of child support arrears.

In the meantime, Copeland, a Financial Support Worker with the Tallapoosa County DHR, had initiated legal proceedings in a state court to collect the child support arrears and interest Burns owed to the State of Alabama and his son's mother.  Burns notified Copeland that he had a debilitating disease, and, once he was approved for SSI, he told her that it was his only source of income. Copeland also had access to the Alabama Location Enforcement and Collection System (ALECS), a computerized and integrated network used to locate non-custodial parents, establish orders of paternity and support, and collect and disburse money for child support.  ALECS is interfaced with the 407(a).  Therefore, "[w]ith such a vast array of resources" indicating that Burns had no "assets or monies besides ... SSI entitlement monies," Copeland "had actual and/or constructive notice that

4

[Burns's] only source of income was and is SSI benefits." Burns Compl. ¶ 14 (Doc. No. 1). Nonetheless, Copeland continued to request that the state court set case status reviews and compliance hearings to force him to pay the child support arrears and interest he owed. At each proceeding, Copeland asked the state-court judge to have Burns arrested for contempt of court if he failed to pay the child-support arrears and interest.

When he appeared in court at these various hearings, Burns notified Copeland and the state-court judge that he had applied for SSI benefits. He also told Copeland that the numerous court appearances were interfering with his doctor's appointments for treatment of his condition. The judge initially gave Burns a reprieve while he awaited his SSI payments. However, when he failed to receive SSI benefits (the court assumes because his application was at first denied), the judge ordered Burns arrested and held in contempt of court. Burns's family managed to find him work from January to September of


[Burns's] only source of income was and is SSI benefits." Burns Compl. ¶ 14 (Doc. No. 1). Nonetheless, Copeland continued to request that the state court set case status reviews and compliance hearings to force him to pay the child support arrears and interest he owed. At each proceeding, Copeland asked the state-court judge to have Burns arrested for contempt of court if he failed to pay the child-support arrears and interest.

When he appeared in court at these various hearings, Burns notified Copeland and the state-court judge that he had applied for SSI benefits. He also told Copeland that the numerous court appearances were interfering with his doctor's appointments for treatment of his condition. The judge initially gave Burns a reprieve while he awaited his SSI payments. However, when he failed to receive SSI benefits (the court assumes because his application was at first denied), the judge ordered Burns arrested and held in contempt of court. Burns's family managed to find him work from January to September of

2008, so that he could make his child support payments and be released from jail. He then received his benefits sometime in November or December of 2008.

On December 2, 2008, one day after Burns received his first lump-sum payment for SSI back benefits, Copeland filed a contempt petition in the state court. During court appearances, Copeland and other Tallapoosa County DHR employees told Burns that if he did not make monthly child support payments amounting to one-third of his SSI benefits, he would go to jail. Copeland also admitted in court that Burns was receiving SSI benefits. On April 29, 2009, the state-court judge ordered Burns to pay $ 676.00 to cover three months of child-support payments, because Tallapoosa County DHR employees had stated that was what he owed for one-third of three months of SSI benefits. He paid $ 633.00, as that was all he could come up with.

Floyd, Copeland's supervisor at the Tallapoosa County DHR, was present at each court proceeding in which

6

Copeland requested that Burns be ordered to pay his child support arrears and interest or be held in contempt of court.

III.  DISCUSSION

While Burns's complaint is not clear as to the legal bases for the relief sought, the court discerns two theories for recovery: first, that Copeland and Floyd violated his right to due process; and, second, that they violated the "anti-attachment" provisions of the Social Security Act.  Copeland and Floyd seek dismissal on a number of grounds, but the court need address only their qualified-immunity defense.[2]

---

2. In their motion to dismiss, Copeland and Floyd actually use the term "State Agent Immunity" as the heading for their argument but then make a qualified-immunity argument.  State agent immunity protects agents of the state of Alabama from state-law claims.  See Ex parte Cranman, 792 So.2d 392 (Ala. 2000).  The court therefore assumes that this heading was a mistake, and that only the defense of qualified immunity is asserted by Copeland and Floyd.

"In a § 1983 action, it is well-settled that qualified immunity ... protects public officials from lawsuits brought against them in their individual capacity."[3]  Young Apartments, Inc. v. Town of Jupiter, FL, 529 F.3d 1027, 1047 (11th Cir. 2008) (internal quotation marks and citation omitted).  To invoke qualified immunity, a government official must first establish that she was "engaged in a 'discretionary function' when [she] performed the acts of which the plaintiff complains."  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  If she

---

3. Copeland and Floyd contend that Burns has not made it clear whether they are sued in their 'individual' or 'official' capacities.  However, it is obvious from Burns's complaint that he has sued them in their individual capacities.  He states: "This is a civil action seeking monetary damages against Florence Copeland (in her individual capacity as Financial Support Worker with the Tallapoosa County Department of Human Resources) and Brenda Floyd (in her individual capacity as Supervisor of the Tallapoosa County Department of Human Resources Child Support Division)." Comp. ¶ 1 (Doc. No. 1).  Moreover, in response to their dismissal motion, Burns removes all doubt that they are sued in their individual capacities only.

does so, "the burden shifts to the plaintiff to show that the defendant is <u>not</u> entitled to qualified immunity." <u>Id</u>. (emphasis original).  To overcome qualified immunity, a plaintiff must show (1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the right violated was "clearly established." <u>Randall v. Scott</u>, 610 F.3d 701, 715 (2010) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  Courts have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first," according to the circumstances of the specific case at issue.  <u>Pearson v. Callahan</u>, 555 U.S. 223, ___, 129 S.Ct.808, 818 (2009).  Here, it is clear and undisputed that Copeland and Floyd were acting within the course and scope of their discretionary authority when the alleged violations of Burns's rights took place.

<u>Due Process Violation</u>:  Burns states only that "Copeland violated [his] constitutional rights afforded to him pursuant to the Due Process Clause of the

9

Fourteenth Amendment." Comp. ¶ 12 (Doc. No. 1). Since all of Burns's claims against Floyd are based on her position as Copeland's supervisor, the court assumes he is charging Floyd with a due-process violation as well. Furthermore, due to the nature of Burns's allegations--that illegitimate state-court proceedings were repeatedly instituted against him--the court infers that Burns brings a 'procedural' due-process claim against Copeland and Floyd.

The Due Process Clause ensures that, "No state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover, Bank & Trust Co., 339 U.S. 306, 314 (1950). Burns makes

no claim that he received insufficient notice or that he did not have "an opportunity to present [his] objections." Id. Indeed, his main complaint seems to be that process was overused against him and that he was forced to repeat his objections at various court hearings. However, this court's responsibility is only to determine whether the procedures put in place to collect child support from Burns, and to hold him in contempt for failure to pay his child support arrears and interest, were constitutionally adequate. If Copeland and Floyd failed to follow state law or Tallapoosa County DHR policy, then Burns should seek redress through the state-court system.

   Too much process (at least as alleged by Burns) does not create a due-process violation. Burns has failed to make out a Fourteenth Amendment due-process claim, and Copeland and Floyd are thus entitled to qualified immunity. The claim is due to be dismissed.

**Violation of the Anti-Attachment Provision**: Burns claims that Copeland and Floyd violated § 407(a) of the Social Security Act, the "anti-attachment provision," by causing him to pay $ 663 towards his child-support arrears and interest, when, because of the computer information available to them and his statements to them, they knew or should have known his only means of support were SSI benefits. Section 407(a) states: "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407(a). Section 1383(d)(1) makes § 407(a) applicable to funds received through SSI.

Burns's claim for relief under § 407(a) is not "clearly established." Randall, 610 F.3d at 715 (quoting Saucier, 533 U.S. at 201). First, it is not clearly

established the cause of action even exists. Section 1983 provides a remedy for "the violation of a federal right, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997). "[T]o maintain a § 1983 cause of action for a violation of § 407(a), [Burns] 'must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs.'" London v. RBS Citizens, N.A., 600 F.3d 742, 745 n.1 (7th Cir. 2010) (quoting City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 120 (2005)). "If shown, there is a rebuttable presumption that the right may be enforced under § 1983." Id. Neither Burns nor Copeland and Floyd address whether § 407(a) creates a private right of action that Burns may enforce under § 1983. And the Court has found no Supreme Court or Eleventh Circuit case law resolving the issue. See London, 600 F.3d at 745 n.1 (assuming, without deciding, that § 407(a) "creates a private right that the plaintiffs may enforce under § 1983 and affirming

13

dismissal of the § 1983 complaint for failure to state a claim).

Second, it is not clearly established what the elements of a § 407(a) claim would be so that Copeland and Floyd would have been on notice as to whether their conduct fell within § 407(a)'s reach.  To be sure, nothing in § 407(a) suggests that merely because Burns receives SSI benefits, he is immune, as he seems to suggest at times, from all lawsuits seeking money from him.  Also, nothing in § 407(a) prohibits a government official from bringing a lawsuit against a recipient of SSI benefits for child-support arrearages.  And, nothing in the language of § 407(a) requires income verification prior to bringing a money-owed lawsuit against someone receiving SSI benefits.  It may be that someone who successfully seeks "execution, levy, attachment, garnishment, or other legal process," 42 U.S.C. § 407(a), from an SSI recipient, knowing that the SSI benefits are the recipient's only source of income, should be held

"personally" liable under §407(a) in a separate lawsuit, but there is no case law establishing such.

The court recognizes that, while "precedent applying the relevant legal rule in similar factual circumstances," Hope v. Pelzer, 536 U.S. 730, 753 (2002), is one way to establish that a claim or right is clearly established, the right may be so "obvious" that prior case law is unnecessary. Id. However, the "obviousness" test is far from satisfied here.

Counsel for Burns has suggested in this litigation that the Tallapoosa County DHR is harassing, or even coercing, SSI recipients into using their benefits to pay child-support arrearages. It appears that, with this lawsuit, counsel wants this court to answer the question of whether § 407(a) prohibits such, and, if the answer is yes, to stop such. Because of qualified immunity, this unsettled question cannot be answered in a case where the defendants have been sued in their individual capacities for money damages. Instead, to get the question

answered, counsel should consider bringing a suit against the appropriate defendants, directly involved in the alleged violations, in their 'official' capacities for injunctive relief, in which instance qualified immunity would not apply.  See <u>Rogers v. Miller</u>, 57 F.3d 986, 989 n.4 (11th Cir. 1995) ("The qualified immunity defense has no application to charges asserted against government actors in their official capacities, or to attempts to gain injunctive relief.").

***

Accordingly, for the above reasons, Copeland and Floyd's motion to dismiss should be granted.  An appropriate judgement will be entered.

DONE, this the 31st day of March, 2011.

<u>    /s/ Myron H. Thompson    </u>
**UNITED STATES DISTRICT JUDGE**